# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

EARL BROWN,

                              Plaintiff,

                              DECISION & ORDER

            -vs-

                              10-CV-6233-CJS

XEROX CORPORATION,

                              Defendants.

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Lindy Korn, Esq.<br>Charles L. Miller, II, Esq.<br>Law Office of Lindy Korn<br>Electric Building<br>535 Washington Street 9th Floor<br>Buffalo, NY 14202<br>(716) 207-0125 |
| For Defendants: | Margaret A. Clemens, Esq.<br>Trent M. Sutton, Esq.<br>Littler Mendelson, P.C.<br>400 Linden Oaks Suite 110<br>Rochester, NY 14625<br>(585) 203-3400 |

## INTRODUCTION

    **Siragusa, J.** This case is before the Court on Xerox Corporation's ("Xerox") motion for an order pursuant to Federal Rule of Civil Procedure 12(b)(6). Xerox seeks dismissal of portions of Plaintiff's FIRST and THIRD causes of action, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, for failure to exhaust administrative remedies; and dismissing his SECOND cause of action, alleging a hostile work environment, for failure to exhaust as well as for failure to state a plausible claim for relief. Defendant's Notice of Partial Motion to Dismiss the

Complaint, Jul. 1, 2010, ECF No. 4. For the reasons stated below, the application is granted.

## FACTUAL BACKGROUND

For the purpose of deciding the motion, the Court assumes the factual allegations in the complaint are true. Those allegations are as follows.

Xerox hired Plaintiff as Manager of Industrial Relations in 1982, and in 2005, promoted him to vice president of Xerox's Strategic Services Group (XSSG) Human Resources.[1] Compl. ¶¶ 12–13. In his position as Manager, Plaintiff took what he characterized as unpopular positions to protect Hispanic and "Black" employees at Xerox. *Id*. ¶ 13. When he did so, Plaintiff states that he was criticized for not being a team player, for being confrontational or for not being willing to help. He does not identify who criticized him. *Id*. ¶ 14.

As an example of his allegations, Plaintiff relates that on July 16, 2008, a white employee confronted her black female manager in the manager's office, speaking at her in a loud and angry voice. The black female manager told the white female employee to "get the F**K out" of her face. Id. ¶ 17. The Human Resources manager (who is not identified in the complaint) recommended that the white female employee be demoted, but made no recommendation concerning the black manager. Subsequently, Plaintiff relates that Mr. Ken Syme ("Syme") who is not otherwise identified, contacted someone

---

[1] Plaintiff's complaint refers several times to HR or Human Resources without using the abbreviation included in paragraph 13, XSSG, and does not explain how XSSG is related to Human Resources.

who Plaintiff identifies only as "Mr. Apello"[2] ("Apello") and both of them met with Plaintiff on September 3, 2008. At the meeting, Syme requested that Apello overrule the Human Resource decision, and that he give both the white female and black female warnings about their behavior and language, respectively. In a somewhat confusing manner, Plaintiff's complaint relates that Apello wanted to give the black female manager a warning for using profanity, and that Plaintiff informed both men, "that he would not agree because this was very aggressive behavior by [the white female employee], and indeed was the second incident of this type which occurred in that area in the previous 90 days." *Id*. ¶ 19. Plaintiff also relates how he intervened in the case of a black male who had recently been given a performance improvement notice by his manager, and that the black male employee had copied in Plaintiff on an email the employee had sent to his manager. *Id*. ¶ 20. At the same September meeting when Apello asked why Plaintiff had become involved in that situation, Plaintiff informed him that the black male employee had copied him on the email, whereupon Apello became angry and left Plaintiff's office. *Id*. ¶ 21.

Plaintiff also relates that he intervened in the situation of Loris McFadden, whose race he does not identify. He states,

> [t]he organization for which Ms. McFadden worked in [sic] had several job openings, but the Defendant refused to give her any of the jobs despite her managers claim that she had good performance. When the Plaintiff intervened on Ms. McFadden's behalf the Defendant created a position in her same organization. By contrast, the Caucasian employee that was also in that organization [Doreen Alfieri] kept her job responsibilities and

---

[2] Only later in the complaint, at paragraph 27, does Plaintiff remark that Apello was Plaintiff's supervisor.

was moved out of the group reporting to the black female manager. After September 4, both black females were laid off[.]

Compl. ¶ 22. Plaintiff next alleges, in a conclusory fashion, that, "[b]ecause of his race (Black)the normal HR processes were not followed" when he was demoted. *Id.* ¶ 22. He alleges that a September 4, 2008, memorandum his was given by Xerox contained "a number allegations," which he alleges, "lacked specificity and definition." *Id*. ¶ 24. In a similarly conclusory fashion, Plaintiff also alleges that because he "often reminded managers of their leadership responsibilities" and of their "obligation to be fair and balanced and to maintain an ethical environment with regard to the treatment of all of their employees," he, in turn, "was treated unfairly." *Id*. ¶ 26.

Plaintiff next describes what he calls the Lominger plan for job selection, promotion and compensation decisions. Plaintiff states that, although he was on the team that developed the plan, he "did not support the concept presented for other than development purposes[3] and was concerned that it might be believed that he did support it." Compl. ¶ 29. In the implementation phase, Plaintiff was prepared to make presentations on the Lominger plan and his contention that it should not be used for economic decisions concerning an employee, but he was demoted prior to the scheduled presentation periods and, therefore, did not make his presentations. *Id*. ¶ 34.The last two paragraphs of the factual portion of Plaintiff's complaint are as follows:

> 35. The subsequent roll-out package contained information on how to administer stock, bonus and wage increases based on an employee's Lominger assessment. All of the African-American HR managers were removed from their jobs as well and not used in the rollout sessions, even

---

[3]The complaint does not explain what was meant by "development purposes."

though they were trained in the process and knew the employees and the managers.

36. On March 25, 2010 the Plaintiff was informed that his current position has been eliminated. He was given a list of open positions, all of a lower grade level. He has offered proposals for projects he could perform, but has received no response.

Compl. ¶¶ 35–36.

In his FIRST cause of action, Plaintiff alleges racial discrimination in violation of Title VII,[4] citing his "unwarranted demotion, the circulation of unfounded allegations, and criticism that he was too sensitive on the basis of race," as well as the handling of his demotion in September 2008, which he alleges "was not in compliance with Xerox's ordinary polices [sic] and was the culmination of an ongoing pattern of discriminatory practices against the Plaintiff." *Id*. ¶ 38. He further alleges that he "was treated less favorably than Caucasian employees…." *Id*. ¶ 40.

In his SECOND cause of action, Plaintiff alleges a hostile work environment in violation of Title VII. As examples of the hostility he faced, Plaintiff alleges as follows:

Comments to the Plaintiff by his supervisors including accusing him, among others, of being too "too sensitive, telling him that there was "no problem" or that the people he defended "are just looking for entitlements." The Defendant minimized the Plaintiff's contribution as a Human Resources professional and disparaged the Plaintiff and other African-American employees, subjected the Plaintiff to a hostile work environment in violation of Title VII caused by his employer, Xerox Corporation.

Compl. ¶ 43. As with the FIRST cause of action, Plaintiff also alleges in the SECOND cause of action that, "Plaintiff was treated less favorably than Caucasian employees…." *Id*. ¶ 46.

---

[4] Pub.L. 88-352, Title VII, § 703, July 2, 1964, as amended, codified at 42 U.S.C. § 2000e *et seq.*

As a THIRD cause of action, Plaintiff alleges retaliation, also in violation of Title VII, and that:

> Defendant, being aware of the Plaintiffs opposition to discriminatory practices, then subjected the Plaintiff to materially adverse job actions in the form of unwarranted criticism, failure to follow its own policies, and eventually made baseless allegations against the Plaintiff and removed him from his position. These actions would tend to dissuade a reasonable person from asserting a claim or participating in an investigation.

*Id*. ¶ 50.

On July 1, 2010, ECF No. 4, in lieu of an answer, Xerox filed the instant motion to dismiss and both parties filed papers in support of, or opposition to, Xerox's motion. On May 24, 2011, the Court heard oral argument, and on January 2, 2013, referred this case to mediation, subsequently denying the parties' joint application to adjourn mediation.

## STANDARD OF LAW

The U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted). *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through

factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)). As the Supreme Court clarified in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555, (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678–79 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

Since the motion is brought under Federal Rule of Civil Procedure 12(b)(6), the Court must presume that the allegations in the complaint are true and resolve all doubts and inferences in favor of the non-moving party. *Wright v. Ernst & Young LLP*, 152 F.3d 169,173 (2d Cir.1998). Both parties have relied upon documents outside the complaint in support of their positions. As the Court of Appeals stated, "[f]or purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference…and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit…." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted). Thus, the Court will employ the same rule in examining the papers outside the complaint relied upon by the parties here.

## ANALYSIS

As indicated above, Xerox is moving to dismiss some of Plaintiff's causes of action. Specifically, they argue that portions of the FIRST and THIRD causes of action, "based on the allegation that Plaintiff was informed in March 2010 that his position had been eliminated," should be dismissed, "because Plaintiff failed to exhaust his administrative remedies with regard to those claims." Xerox also contends that the SECOND cause of action, alleging a hostile work environment, should be dismissed, again for failure to exhaust, or alternatively because it fails to present a plausible claim of a hostile work environment.

***FIRST & THIRD Causes of Action—Elimination of Position—Failure to Exhaust***

As the Second Circuit observed in *Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001):

> A plaintiff may bring an employment discrimination action under Title VII or the ADEA only after filing a timely charge with the EEOC or with "a State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e-5 (e) (Title VII); see 29 U.S.C. §§ 626 (d), 633(b) (ADEA). Exhaustion of remedies is a precondition to suit, *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000), and a plaintiff typically may raise in a district court complaint only those claims that either were included in or are "reasonably related to" the allegations contained in her EEOC charge. *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (internal quotation marks omitted) (Title VII); *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1208 (2d Cir. 1993) (ADEA).

*Holtz*, 258 F.3d at 82–83. The parties agree that the alleged elimination of Plaintiff's position took place *after* Plaintiff had already filed a complaint with the EEOC and *after* he received a right to sue letter.[5] Xerox Mem. of Law at 6; Pl.'s Mem. of Law at 4. Thus, although the EEOC complaint raised the issue of Plaintiff's demotion (not mentioning any date), it did not raise the issue of the alleged elimination of his position, which he maintains because Plaintiff failed to include a hostile work environment claim in his complaint to the Equal Employment Opportunity Commission ("EEOC") and because his allegations fail in the complaint took place on March 25, 2010. Compl. ¶ 36. The Second Circuit has defined "reasonably related" in relation to an EEOC complaint as follows:

> Subsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff "alleges further

---

[5]Charge of Discrimination, Jan. 16, 2009, ECF No. 4-4 (attached to Xerox's motion to dismiss as Ex. A). Dismissal and Notice of Rights, Feb. 1, 2010, ECF No. 4-4 (attached to Xerox's motion to dismiss as Ex. B).

> incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts v. City of N.Y. Dep't of Hous. Preservation and Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993).

*Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002). The third exception listed above does not apply to the circumstances here. Turning to the two exceptions that might be applicable, the first exception does not apply to conduct that occurs after the EEOC completes its investigation. *See Santos v. Engelhard Corp.*, No. 05 Civ. 203 (PGG), 2009 U.S. Dist. LEXIS 71088, *20 n7 (S.D.N.Y. Aug. 6, 2009); *Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03 Civ. 8363 (SHS), 2004 U.S. Dist. LEXIS 5155, *8–9 (S.D.N.Y. Mar. 29, 2004) ("The new alleged failure to promote in 2004, falling well after the date of the EEOC determination in 2003, did not fall within the scope of the EEOC investigation."). "[C]laims may still be considered 'reasonably related' even if the EEOC did not investigate the charge, so long as it had the opportunity to do so." *Dargento v. Bally's Holiday Fitness Centers*, 990 F. Supp. 186, 193 (W.D.N.Y. 1997); *see also, Boimah v. Cumberland Farms, Inc.*, No. 03-CV-0121, 2005 WL 3671628 at *4 (N.D.N.Y. Dec. 30, 2005) ("It is of no moment whether the EEOC actually investigated the claim; it is the opportunity to do so that is key."), *aff'd* 239 Fed.Appx. 632 (2d Cir. Jun 20, 2007). Plaintiff's termination claim, having occurred after the EEOC completed its investigation, could not be reasonably related to the EEOC's investigation.

With regard to the second exception, Plaintiff does not allege in his complaint that the elimination of his position was done as a result of retaliation: "On March 25, 2010 the Plaintiff was informed that his current position has been eliminated. He was given a list of open positions, all of a lower grade level." Compl. ¶ 35. Accordingly, the second exception does not apply. Therefore, Defendant's motion to dismiss claims

arising out of Plaintiff's alleged wrongful termination because of his failure to exhaust is granted.

***SECOND Cause of Action—Hostile Work Environment***

The legal standards for a hostile environment claim are well settled:

> In order to establish a hostile work environment claim...a plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. A hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive. The plaintiff must show more than a few isolated incidents of racial enmity, although a hostile work environment can also be established through evidence of a single incident of harassment that is extraordinarily severe.

*Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 723–24 (2d Cir. 2010) (citations and internal quotation marks omitted). First, the Court will address Xerox's argument that Plaintiff has failed to raise a hostile work environment claim in his EEOC filing.

In that regard, the EEOC complaint mentions only the following that could pertain to a hostile work environment:

> When I raised an issued (either because of policy, process or legality) I would be criticized as "not being a team player, being confrontational or not willing to help.…" When I informed my management of an issue of race, I was told that I was "too sensitive, that there was not problem, or that the employees were just looking for entitlements.…" [A] very negative announcement of my demotion was written and distributed. This memo was distributed universally with the intent of damaging my reputation and publicly embarrassing me.

Charge of Discrimination at 1–2. Nothing in the EEOC charge raised the issue of a racially hostile working environment, one that was "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of h[is]

employment were thereby altered." *Fincher*, 604 F.3d at 723–24. However, using the same definition of "reasonably related" that the Court discussed above, any subsequent claim of a hostile work environment in the complaint could be considered as "reasonably related" to the EEOC charge. Nevertheless, Plaintiff's complaint is not sufficient to withstand a Rule 12(b)(6) motion.

The allegations in the complaint consist of the following allegedly harassing statements: Plaintiff states that he was criticized for not being a team player, for being confrontational or for not being willing to help, for being "too sensitive, that there was not a problem, or that employees were just looking for entitlements." Compl. ¶ 43. He does not identify who criticized him, or the frequency of the criticisms.

Plaintiff concedes that, "[s]een in isolation, such items as Defendant's Exhibit C[6] and even Plaintiff's Exhibit[7] could be seen as facially neutral." Pl.'s Mem. of Law at 7. Plaintiff contends, however, that "as the context provided in the complaint makes clear, the underlying facts giving rise to the memos at issue and the transfer that resulted are not facially neutral." *Id*. at 7–8. The Court disagrees with Plaintiff's position and finds that the statements in those two exhibits, and the allegations in Plaintiff's complaint, are facially neutral, and neither the exhibits, nor the allegations in the complaint, support a claim of a working environment, "so severely permeated with discriminatory intimidation,

---

[6] A Xerox memorandum announcing an organization change in the XSSG HR organization, which includes language obliquely referencing Plaintiff's demotion: "Earl Brown is moving to a new assignment In Corporate HR where he will support Bill Castle in several of the initiatives underway in Bill's organization. A search is underway for a new HR VP for XSSG."

[7] A Xerox memorandum from Wim Appelo, President, XSSG, to Plaintiff, copy to P. Nazemetz, dated September 4, 2008, memorializing Appelo's and Plaintiff's discussion concerning his demotion.

ridicule, and insult that the terms and conditions of h[is] employment were thereby altered." *Fincher*, 604 F.3d at 723–24. Plaintiff's allegations "simply do not rise to the level of pervasiveness or abusiveness necessary to state a claim for hostile work environment under Title VII." *Milne v. Navigant Consulting*, No. 08 Civ. 8964 (NRB), 2009 U.S. Dist. LEXIS 112632, *24 (S.D.N.Y. Nov. 30, 2009).

## CONCLUSION

For the reasons stated above, Xerox's motion, ECF No. 4, seeking partial dismissal, is granted. Claims in Plaintiff's FIRST and THIRD causes of action based on allegations that Plaintiff's position was eliminated are dismissed, as well as Plaintiff's entire SECOND cause of action alleging a hostile work environment.

IT IS SO ORDERED.

Dated: March 1, 2013
Rochester, New York

ENTER.

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge