EARL BROWN,

                                        Plaintiff,

                                                                    DECISION & ORDER

                    -vs-

                                                                    10-CV-6233-CJS

XEROX CORPORATION,

                                        Defendants.

## APPEARANCES

For Plaintiff:                          Lindy Korn, Esq.
                                        Charles L. Miller, II, Esq.
                                        Law Office of Lindy Korn
                                        Electric Building
                                        535 Washington Street, 9th Floor
                                        Buffalo, NY 14202
                                        (716) 207-0125

For Defendants:                         Margaret A. Clemens, Esq.
                                        Trent M. Sutton, Esq.
                                        Littler Mendelson, P.C.
                                        400 Linden Oaks, Suite 110
                                        Rochester, NY 14625
                                        (585) 203-3400

## INTRODUCTION

**Siragusa, J.** This case is before the Court on Plaintiff's motion for reconsideration, filed on April 1, 2013, ECF No. 16. Plaintiff seeks reconsideration of the Court's dismissal of his SECOND cause of action, alleging a hostile work environment. For the reasons stated below, the application is denied.

## FACTUAL BACKGROUND

For the purpose of deciding the motion, the Court assumes the factual allegations in the complaint are true. Those allegations were set out in the Court's original decision, familiarity with which is presumed. More than fourteen days have passed since Plaintiff filed and served his motion. Pursuant to this Court's local rule, the time for Defendant to

respond to Plaintiff's reconsideration application has passed. L.R. Civ. P. 7(b)(2)(B) ("The opposing party shall have fourteen days after service of the motion to file and serve responding papers, and the moving party shall have seven days after service of the responding papers to file and serve reply papers.").

## STANDARD OF LAW

As the Fifth Circuit has recognized, "[t]here is no motion for 'reconsideration' in the Federal Rules of Civil Procedure. *See Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n. 10 (5th Cir.1998). However, a motion for reconsideration filed within ten days of the district court's judgment is construed as a Rule 59(e) motion that suspends the time for filing a notice of appeal. *Id*; *Bass v. U.S. Dept. of Agriculture*, 211 F.3d 959, 962 (5th Cir. 2000). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995).

## ANALYSIS

In its prior decision and order on the SECOND cause of action, alleging hostile work environment, the Court rejected Xerox's argument that Plaintiff's complaint to the Equal Employment Opportunity Commission ("EEOC") was not broad enough to include a hostile work environment claim. On analysis pursuant to the Rule 12(b)(6) standard, the Court determined that,

> the statements in…two exhibits, and the allegations in Plaintiff's complaint, are facially neutral, and neither the exhibits, nor the allegations in the complaint, support a claim of a working environment, "so severely permeated with discriminatory intimidation, ridicule, and insult that the

terms and conditions of h[is] employment were thereby altered." *Fincher*, 604 F.3d at 723–24. Plaintiff's allegations "simply do not rise to the level of pervasiveness or abusiveness necessary to state a claim for hostile work environment under Title VII." *Milne v. Navigant Consulting*, No. 08 Civ. 8964 (NRB), 2009 U.S. Dist. LEXIS 112632, *24 (S.D.N.Y. Nov. 30, 2009).

*Brown v. Xerox Corp.*, No. 10-CV-6233-CJS, 2013 U.S. Dist. LEXIS 31617, *18–19 (W.D.N.Y. Mar 4, 2013).[1]

In his motion for reconsideration, Plaintiff argues that the Court's decision, "does not follow the prescription for analysis in a Title VII matter." Mem. of Law at 2, ECF No. 16-1. Plaintiff contends that the Court failed to examine the totality of the circumstances, "'including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.'" *Id*. (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir.2003) (quotation marks omitted in original). As the Appellate Court noted in *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166 (2d Cir. 2012):

> "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris*, 510 U.S. at 23.
>
> > These may include the *frequency* of the discriminatory conduct; its *severity*; whether it is *physically threatening* or *humiliating*, or a mere offensive utterance; and whether it *unreasonably interferes with an employee's work performance*. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be

---

[1]The Court wrote in its original decision that, "[b]oth parties have relied upon documents outside the complaint in support of their positions." *Brown*, 2013 U.S. Dist. LEXIS 31617 at *11. That characterization, as the decision later describes, is not entirely accurate. Rather, the documents relied upon by the parties were, as the Court determined, incorporated into the complaint by reference, or by reliance. *Id*. at *11–12.

taken into account, *no single factor is required*.

> *Id*. (emphases added). To "establish[] this element, a plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Communications, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) ("Pucino") (emphases in original); *see, e.g., Terry v. Ashcroft*, 336 F.3d 128, 148-50 (2d Cir. 2003) (race discrimination); *see generally Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n.1, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (standards for what amounts to actionable abuse are the same for racial and sexual harassment).

*Redd*, 678 F.3d at 175; *but see Jaafari v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 11-4025-cv, 2013 WL 335986 (2d Cir. Jan. 30, 2013) ("Jaafari's hostile work environment claim also fails because his allegations regarding comments about his national origin, his status as a Muslim and/or religious beliefs do not constitute severe *and* pervasive discriminatory conduct.") (emphasis added). In its decision in *Faragher*, the Supreme Court provided guidance on the issue of actionable abuse, writing:

> A recurring point in these opinions is that "simple teasing," *id*., at 82, 118 S. Ct., at 1003, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment."

> These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." *Id*., at 80, 118 S. Ct., at 1002. Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992) (hereinafter Lindemann & Kadue) (footnotes omitted). We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view.

*Faragher*, 524 U.S. at 788.

In his memorandum, Plaintiff points out the following allegations in the complaint in support of his contention that he has plead a plausible claim of hostile work

environment:

> The comments to the Plaintiff as cited in the Complaint at ¶ 15 (when the Plaintiff informed his superiors of an issue of race, he would be told that he was "too sensitive,["] that there was "no problem," or that "they are just looking for entitlements."); and ¶ 21 (when it was inquired why the Plaintiff, a Human Resources manager, was involved in a work related issue), at ¶ 22 noting the layoff of black females, at ¶ 23-4 were [sic] the issue of the unspecified work performance issues laid at the Plaintiff's door is raised, at ¶ 27 which noted that the treatment Plaintiff was receiving was seen on the part of coworkers as not deserved, and at ¶¶ 29-35 with the concerns the Plaintiff raised with respect to the impending implementation of a new management plan, the Lominger Plan which would have disproportionate effects African American Employees and did result in the elimination of "all of the African-American HR managers were removed from their jobs….["]

Pl's Mem. of Law at 3–4, ECF No. 16-1. Plaintiff's complaint alleges that "managers at times would attempt to take actions that were discriminatory (either intentionally or unintentionally)." Compl. ¶ 14. Plaintiff states that when he "raised an issue (either because of policy, process or legality) he would be criticized as 'not being a team player,' of being confrontational, or not willing to help." *Id*. In the following paragraph, Plaintiff alleges:

> 15. On the occasions when the Plaintiff prevailed in protecting the rights of a Black or Hispanic employee in the organization, he would be accused of being responsible for the issue. If Black or Hispanic employees raised an issue of unfairness, the Plaintiff would be blamed for the environment within the organization, even if the managers failed to follow the HR Department's processes and recommendations. When the Plaintiff informed his superiors of an issue of race, he would be told that he was "too sensitive,["] that there was "no problem," or that "they are just looking for entitlements."

Compl. ¶15. Plaintiff then describes an incident that occurred on July 16, 2008, nearly five years ago, when a white female employee confronted her black female manager. The confrontation evolved into a screaming match, during which the manager told the employee to, "'get the F**K out' of her face." Compl. ¶17. The human resources

manager, after an investigation, recommended that the employee be demoted, be required to attend anger management classes and be given a final warning. *Id*. ¶18. Another employee, who is only identified as Mr. Ken Syme, requested that Plaintiff and someone identified as Mr. Apello, overrule the decision to demote the white female employee. *Id*. ¶19. Plaintiff informed both Mr. Apello and Mr. Syme that he did not agree. *Id*. At the meeting, Mr. Apello brought up the subject of another employee, a black male named Jessie Allen, who had been given an performance improvement notice. *Id*. ¶ 20. At the meeting, Mr. Apello, "became angry and stormed out of the office, leaving the Plaintiff alone with Mr. Syme." Compl. ¶ 21.

None of the information plead in these paragraphs alleges a plausible claim that the working environment was severe or pervasive enough to have altered Plaintiff's working conditions. The allegations in these paragraphs show uncivil behavior and clearly contentious situations, but lack a nexus to Plaintiff's working conditions based on his race.

Continuing with its analysis of the complaint, the Court notes the following allegations. In paragraph 22, Plaintiff describes another situation involving an employee named Loris McFadden, whose race is not described. He alleges that she was treated differently from another employee, whom Plaintiff describes as "Caucasian."  However, he does allege that Ms. McFadden was provided a position once Plaintiff intervened on her behalf, but that, "[a]fter September 4th, both black females were laid off." He does not explain the details of the situation. Compl. ¶ 22. Once again, the allegations in this paragraph do not show a nexus to Plaintiff's working conditions based on his race.

In his allegations in paragraphs 23 through 36, Plaintiff discusses his own employment situation. Without explanation, he states simply that, "[b]ecause of his race (Black) the normal HR processes were not followed when the Plaintiff was removed from his position as Vice President of Human Resources." Compl. ¶ 23. The Court addressed these allegations when it dismissed Plaintiff's FIRST and THIRD causes of action for failure to exhaust.[2]

In his memorandum, Plaintiff contends that, "[h]ere the Plaintiff has described incidents of extremely serious ridicule of African Americans by the Defendant's managerial personnel. Moreover, the Plaintiff describes being told that he was to help implement policies bases [sic] of these racist allegations. It is also clear that facts alleged in both the Plaintiff's EEOC complaint and the District Court complaint indicate the environment had [sic] [.]" Pl.'s Mem. of Law at 4–5. The Court disagrees with Plaintiff's characterization of the incidents he described. In the Court's view, the allegations show that the atmosphere was contentious, and that as a human resources vice president, Plaintiff was involved in several disputed matters allegedly concerning racial discrimination against other employees in the organization. Plaintiff would like the Court to conclude the following: that since Xerox management was taking actions that were allegedly racially discriminatory with regard to other employees and since Plaintiff was in human resources and was a racial minority, the actions against the other employees and comments made to Plaintiff, who was involved in resolution of some of those racially

---

[2]The Court dismissed the FIRST and THIRD causes of action to the extent that they were based on Plaintiff's allegations that his position was eliminated, since the elimination occurred after he filed an EEOC complaint and, therefore, his failure to exhaust was apparent from the face of the complaint. Plaintiff has not requested reconsideration of that decision.

charged situations, "could plausibly be taken as ridicule and intimidation of himself as an

African-American, and thus very hostile and such an environment also would plausibly

interfere with his ability to do his job." The Court is unpersuaded.

In *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010), the

Second Circuit in the context of a hostile work environment claim held that,

> "[T]he plaintiff must show more than a few isolated incidents of racial
> enmity," *Williams v. County of Westchester*, 171 F.3d 98, 100-01 (2d Cir.
> 1999) (*per curiam*) (internal quotation marks omitted), although a hostile
> work environment can also be established through evidence of a single
> incident of harassment that is "extraordinarily severe," *Cruz v. Coach
> Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000); *Alfano*, 294 F.3d at 374.

*Fincher*, 604 F.3d at 724. In support of his SECOND cause of action, Plaintiff has alleged

a few isolated incidents of racial enmity, none of which is objectively extraordinarily

severe. In *Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997), the court held that the

totality of the circumstances must be considered, writing,

> [f]or racist comments, slurs, and jokes to constitute a hostile work
> environment, there must be "more than a few isolated incidents of racial
> enmity," *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986),
> meaning that "instead of sporadic racial slurs, there must be a steady
> barrage of opprobrious racial comments," *Bolden v. PRC Inc.*, 43 F.3d
> 545, 551 (10th Cir. 1994); *see Ways v. City of Lincoln*, 871 F.2d 750, 754
> (8th Cir. 1989). Thus, whether racial slurs constitute a hostile work
> environment  typically depends upon "the quantity, frequency, and
> severity" of those slurs, *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1164
> (7th Cir. 1994), considered "cumulatively in order to obtain a realistic view
> of the work environment," *Doe*, 42 F.3d at 444; *see Harris*, 510 U.S. at 23.

*Schwapp*, 118 F.3d at 110–11. When the Court looks at the totality of the circumstances,

it does not find that Plaintiff has plead a plausible cause of action for a hostile work

environment. Though the individuals who were experiencing problems with employment

at Xerox were minorities, the comments made to Plaintiff that the affected employees

wanted only to obtain some entitlements, or that Plaintiff was too sensitive, or that there

was no problem, fail to rise to the level of allegations necessary for a plausible complaint of hostile environment discrimination. The comments and incidents described in the complaint were infrequent, and the situations were not objectively severe. In only one incident, involving a white employee and black manager, could the situation be described as physically threatening to the black manager (not Plaintiff). The only offensive utterance came from the black manager to the white employee and was not a racial epithet. Finally, Plaintiff has not plead how the situations he described adversely affected his work performance since he continued throughout to intervene where he thought it necessary. Nowhere does Plaintiff allege that the incidents he described in the complaint had an effect on his psychological well-being.

Even when considering that Plaintiff was necessarily exposed to a number of alleged racial discrimination complaints by others (since he was a vice president of human resources), Plaintiff has not plausibly plead that the work atmosphere was permeated with racial hostility that changed the terms and conditions of his employment. Therefore, the Court finds no basis to reconsider its prior decision.

## CONCLUSION

For the reasons stated above, Plaintiff's application for reconsideration, ECF No. 16, is denied.

IT IS SO ORDERED.

Dated:   April 29, 2013
            Rochester, New York

ENTER.

/s/ Charles J. Siragusa
CHARLES J.  SIRAGUSA
United States District Judge